LARKIN SMITH, by his next friends, v. C. H. SMITH.

*Lunacy — Next Friends — Guardian — Comments of Counsel — Sworn Pleadings — Evidence.*

1. Persons *non compos mentis* may sue by their next friend when they have no general or testamentary guardian.

2. In an action involving, among other things, the sanity of the plaintiff, his counsel, in addressing the jury, commented upon the failure of one of the defendants to answer the sworn complaint, which reflected upon his character. The complaint was not put in evidence: *Held*, that, upon objection by the other side, the Court below erred in not stopping counsel.

3. When a party intends to use pleadings as evidence, he should put them in evidence—mere reading to the jury is not sufficient for this purpose.

4. Suggestions by SHEPHERD, J., as to trials where there are double issues.

This was a CIVIL ACTION, tried before *Armfield, J.*, at October Term, 1889, of WAKE Superior Court.

The action was brought in the name of Larkin Smith, by his next friends, Ferrell and wife, Wiggs and wife, appointed such by the Court, against Charles Smith. The summons was issued on the 20th December, 1888; and after it was served on Charles Smith, to-wit, on the 26th day of February, 1889, Charles Smith took a power of attorney, already written, to Larkin Smith and procured his signature thereto— said power of attorney purported to appoint Messrs. Fuller & Snow and Batchelor & Devereux, attorneys at law of the city of Raleigh and county of Wake, attorneys of the said Larkin Smith, and to empower and direct them to dismiss this action. At the last preceding term of the Court Messrs. Fuller & Snow and Batchelor & Devereux presented this power of attorney of February 26th, 1889, to the Court, and moved to dismiss the action; whereupon it was suggested to the Court, by the counsel for the plaintiffs, that at the time of the execution of this power of attorney of February 26th, 1889, Larkin Smith was insane, and incapable of appointing an attorney in the cause, and the motion to dismiss was continued to this term.

When the case was called for trial at this October Term, 1889, Messrs. Fuller & Snow and Batchelor & Devereux renewed their motion to dismiss the action under their power of attorney, and under an affidavit.

The Court overruled the motion, and Messrs. Fuller & Snow, who were in Court and making the motion, excepted for the defendant Charles Smith, and also in the name of Larkin Smith.

Messrs. Fuller & Snow then asked the Court to hear the evidence as to the sanity of Larkin Smith, and himself decide as to the competency to execute the said power of attorney of February 26th, 1889. His Honor refused to do this, saying he would submit an issue upon this matter to the jury to enlighten the conscience of the Court, and as the evidence upon this issue would involve much of the evidence raised by the pleadings in the case, he would at the same time submit the issues raised by the pleadings. To this Messrs. Fuller & Snow excepted. Messrs. Fuller & Snow then tendered the following issue: " Was Larkin Smith, at the time of the execution of the power of attorney to Fuller & Snow and Batchelor & Devereux, on February 26th, 1889, a lunatic and incapable, from want of understanding, to manage his own affairs?" His Honor declined this issue, and submitted the issues found in the record to the jury. To this Messrs. Fuller & Snow excepted, on behalf of Charles Smith, and also of Larkin Smith.

On the trial E. P. Wiggs, one of the next friends of plaintiff, testified, after objection by Messrs. Fuller & Snow, that, before Larkin Smith was stricken with paralysis, and when he was in his right mind, he told witness that defendant Charles Smith was in the habit of drinking and running after bad women, and that he could not trust him with his business; and Messrs. Fuller & Snow excepted. The same witness, after like objection, testified that the defendant Charles Smith told him that he carried the power of attorney of February 26th, 1889, to Larkin Smith and got him to sign it, and further told him that he, Charles, could have this power of attorney undone whenever he wanted to. To this Messrs. Fuller & Snow excepted.

The same witness, after like objection, testified that defendant Charles Smith told him about April 1, 1889, that Larkin Smith was not competent to attend to any business, and that in November, 1888, Charles Smith told him that Larkin

Smith was then in such a condition that he, Charles, could not make any trade with him, and that he, Charles, wanted the children all to meet, for Larkin was not competent to attend to any business. Messrs. Fuller & Snow excepted.

Mrs. A. L. Ferrell testified, after objection by Messrs. Fuller & Snow, that she did not believe, after being much with Larkin Smith, and observing his mental condition, that he had sufficient mental capacity to understand or know the effect of a power of attorney. Messrs. Fuller & Snow excepted.

This witness further testified, after like objection, that defendant told her the day after Larkin's wife died that he, Larkin, was not competent to attend to any business, and was the same as if he was dead. Messrs. Fuller & Snow excepted.

This witness, after like objection, further testified that Larkin Smith was mentally incapable of guarding himself against imposition or fraud

One of the counsel for the plaintiff, in his address to the jury, spoke of the fact that the defendant Charles Smith had not answered the complaint in this action, and said that no doubt the reason that prevented him from doing so was the fact that the complaint was sworn to, and that the defendant could not safely answer many of the charges therein against him without committing perjury. Messrs. Fuller & Snow asked the Court to stop the counsel. The Court declined to do so, and they excepted, saying that the complaint had not been put in evidence. The Court replied, which was the fact, that after the jury were impaneled the complaint had been read to them without objection on the part of the defendant.

The jury found the issues as set out in the record, and the Court gave judgment as is therein set out. The counsel for the defendant entered a rule for a new trial, before judgment, which was dismissed. Messrs. Fuller & Snow appealed

to the Supreme Court, both for Larkin Smith and for Charles Smith.

*Mr. J. H. Fleming,* for plaintiffs.

*Messrs. J. B. Batchelor, John Devereux, Jr.,* and *E. C. Smith,* for defendant.

SHEPHERD, J.: We do not concur with the defendant that the Court had no power to submit the issues involving the mental capacity of Larkin Smith to execute the papers in controversy. There can be no question but that persons *non compos mentis* may sue by their next friend when they have no general or testamentary guardian (*The Code,* § 180); and "it is incident to the ordinary jurisdiction of a Court having full chancery powers to inform its conscience by directing an issue upon the sanity of a party, not found a lunatic, to be framed for a jury, when the question arises collaterally in an equitable proceeding, as, for instance, when it becomes necessary to determine the question of the sanity of the grantor in a deed upon a bill brought to set aside his conveyance upon the ground of his insanity." Busw. Insane, 55.

It is insisted by the defendant that no action can be brought until there has first been an inquisition of lunacy under chapter 37 of *The Code,* and for this position he relies upon the case of *Dowell* v. *Jacks,* 5 Jones' Eq., 417. In that case the plaintiff had been declared insane under an inquisition directed by the County Court (Revised Code, ch. 57), and the plaintiff sued in equity to have the proceedings set aside, because of errors and irregularities, and also because she was, in fact, of sound mind. The Court dismissed the bill, not because it had no jurisdiction to entertain suits brought by the next friend of a lunatic, who had not been legally declared to be such, but for the reason that the jurisdiction as to inquisitions of lunacy was exclusively in the County Court. BATTLE, J., in delivering the opinion, said

that the effect of the provisions of the Revised Code was "to confer upon the County Courts original and exclusive jurisdiction to issue writs from time to time, as may be necessary for the purpose of ascertaining, by the inquisition of a jury, whether a party be an idiot or lunatic, or, if he had been once found to be a lunatic, whether he had become of sound mind again" The decision does not support the contention of the defendant, and we think it well settled that where there has been no inquisition the lunatic may sue by next friend. The jurisdiction is expressly recognized and upheld by English Chancery Courts. See *Beall* v. *Smith*, L. R., 9, ch. 85, 91; *Jones* v. *Lloyd*, L. R., 18 Eq., 265, 274, 275. In the latter case JESSEL, M. R., said: "Can a suit be instituted by the lunatic, not found so by inquisition, by his next friend? I have no doubt it can. There is authority upon the subject, and it seems to me so distinct that I have no occasion really to refer to the reasons, for I think the cases of *Light* v. *Light*, 25 Beav., 248, and *Beall* v. *Smith*, L. R., 9, ch. 85, are such authorities; but, independently of the unreported case of *Fisher* v. *Mellcs*, where I know the point was discussed, and, independently of authority, let us look at the reason of the thing. If this were not the law, anybody might, at his will and pleasure, commit waste on a lunatic's property, or do damage or serious injury and annoyance to him or his property without there being any remedy whatever." To the same effect is Busw. Insan., § 120, where it is said that "when a person is, in fact, insane, but has not been so adjudged by a competent tribunal, or placed in charge of a committee of guardian, the Courts, whether of law or equity, have jurisdiction to entertain suits brought by one as the next friend of the insane person." These authorities are decisive against the defendant upon the question of jurisdiction.

We think, however, that there was error in permitting the counsel, after objection by the defendant, to comment upon

the fact that the complaint was verified, and had not been answered by the defendant. It is true that the complaint had been read to the jury after it was impaneled, but it was not formally put in evidence, and "such evidence," says the Court in *Smith* v. *Nimocks*, 94 N. C., 243, "must be introduced on the trial at the proper time, and in the proper way. This is necessary, in order to afford the party to be affected adversely by it just opportunity to explain, modify or correct it. He might be able to show that the admissions or statements were made by inadvertence, mistake or misapprehension; and the law allows him reasonable and orderly opportunity to do so It never tolerates undue advantage. *State* v. *Whit*, 5 Jones, 224." So, in this case, the defendant should have had an opportunity of explaining his alleged failure to answer. For instance, he might have shown that he did not answer because of his reliance upon the power of attorney authorizing a dismissal of the action, or he might have shown other good and sufficient reasons. Besides, it does not appear that an answer was not, in fact, filed. None appears in the record, but the case speaks of "issues raised by the pleadings"; and such issues were submitted as if all the allegations of the complaint had been denied. This could only have been done by a verified answer; and, there being no conflict between the case and the record in this respect, we must construe them together and assume that the defendant did make a proper answer to the complaint. Taking it in either aspect, we think the remarks of the counsel, under the circumstances, must have been highly prejudicial to the defendant, and that the Court should have promptly interfered when requested so to do. In the cases above cited it is said that while pleadings may be read to the jury, under direction of the Court, in order that they may understand more clearly "the nature and scope of the issues," yet, where they are to be used as evidence, they should be formally introduced as such. As this case falls

directly within the principles declared by the above decision, we must grant the defendant a new trial.

This renders it unnecessary for us to pass upon the other exceptions. We will remark, however, that where "double issues" are submitted, as in this case, the Court should carefully instruct the jury as to the applicability of the testimony to each of such issues, so that the testimony pertinent to one may not influence the finding as to the other. Where, from the nature of the case, the Court can see that this cannot be successfully done, the preliminary issue should be tried first. Very little of the testimony in this case is sent up, but from what is in the record, it does not appear that the two issues could not have been tried together without prejudice to the rights of the parties, and, as the charge is not before us, we assume that his honor gave all proper and necessary instructions. For the reasons given, there must be a new trial.

Error.