ALVINA SCHICK *et al.*, Appellants, v. D. H. H. STUHR,
Appellee.

Guardianship: AUTHORITY FOR APPOINTMENT. The fact that a man
1   seventy-five years of age, owing to temperament and immoral
habits, may develop a disposition to squander his property,
while in his business affairs he has been and still is ordinarily

prudent and thrifty, will not warrant the appointment of a
guardian for him as a person of unsound mind, under Code,
section 3219.

Same.  The fact that one of high temper and immoral tendencies
2    may commit wrongs rendering him liable to respond in dam-
ages will not authorize the appointment of a guardian, as
his estate would be equally as liable in the hands of a guardian.

*Appeal from Scott District Court.*—HON. J. W. BOLLINGER,
Judge.

FRIDAY, MAY 15, 1903.

ACTION brought for the appointment of a guardian for
defendant, who is alleged to be of unsound mind.  De-
fendant is seventy-five years of age, and the plaintiffs
are his children.  There was a jury trial, and a verdict
finding defendant to be of unsound mind.  On his motion,
such verdict was set aside, and a new trial granted.  The
plaintiffs appeal.—*Affirmed.*

*W. M. Chamberlain* and *Schmidt & Vollmer* for
appellants.

*Louis Block* for appellee.

BISHOP, C. J.—The verdict of the jury was set aside
simply for the reason that the same was not warranted by
the evidence produced upon the trial.  In passing upon
the motion, the trial court took occasion to sum up the
evidence, and what was then said has been preserved, and
is incorporated in the record before us.  Therefrom we
quote:  "The most favorable testimony for plaintiffs' side
shows that defendant was suspicious of his wife's virtue;
falsely accused her of undue intimacy with many men;
was afraid she would poison him, or at least said he was;
had a violent temper; was often guilty of barbarous treat-
ment towards his children and invalid wife; exposed his
person to two or three respectable ladies; had illegitimate

children; settled two bastardy suits; was a sexual pervert."
We have read the entire record, and reach the conclusion
that the statement so made by the trial court presents as
fairly as the record warrants the evidence upon which the
finding of the jury was based. On behalf of defendant it
is made to appear that, by thrift and good management,
he has accumulated considerable property, all of which is
safely invested, and the income from which is at least
$1,500 per annum. No evidence was introduced tending
to prove that he had ever made or entered into any busi-
ness transaction against his interest. On the contrary, it
was made to appear that he fully comprehended the details
of his business affairs, was close and exact in his dealings,
and exercised ordinary sagacity and discretion in all trans-
actions affecting his property rights. Such, in brief, was
the evidence upon which the verdict was predicated; and
the question before us is whether there was an abuse of
discretion on the part of the trial court in refusing to ac-
cept of the verdict, and make an appointment based
thereon. That we will not interfere with an order grant-
ing a new trial, save that an abuse of discretion is made to
clearly appear, is a rule to which we have constantly
adhered. We need not cite the many cases in which it is
announced. In view of the fact, however, that two trials
have been had upon the issue here joined, each trial re-
sulting in a verdict finding the defendant to be of unsound
mind, we are disposed to a more critical analysis of the
record than might be otherwise necessary. We have read
the record with this thought in mind, and at the end we
find ourselves confronted with the single and simple ques-
tion whether the foregoing statement of facts, being
established, not only warrants the appointment of a guar-
dian, but is such that a refusal to appoint, based thereon,
would amount to an abuse of discretion.

Section 3219 of the Code authorizes the appointment
of a guardian for a person of unsound mind, satisfactory

proof having been made. Several times this section has been considered and construed. In *Emerick v. Emerick,* 83 Iowa, 411, the subject was very fully discussed by Robinson, J. In the course of the opinion it is said: "The statute is silent as to what shall constitute the un- soundness which it contemplates, but it is clear that it relates to the capacity of the person affected to transact business. The protection of property is one of the main objects of such statutes as that under consideration, and the test of the unsoundness in question is largely the in- competency of the person to manage property in a rational manner." And again: "If the defendant is capable of transacting the ordinary business involved in taking care of his property, and if he understands the nature of the business and the effect of what he does, and can exercise his will with reference to such business with discretion, notwithstanding the influence of others, he is not of un- sound mind, within the meaning of the statute, and should not be deprived of the control of his property." See, also, the following cases: *Seerley v. Sater,* 68 Iowa, 375; *Harrison v. Otley,* 101 Iowa, 652; *Garretson v. Hubbard,* 110 Iowa, 7.

It does not appear that defendant in this case is now actively engaged in any business. He owns considerable real estate, which is rented, and the remainder of his property is well and safely invested. As to this there seems to be no controversy.

The contentions of plaintiffs may be resolved into two: First, that, owing to his temperament of mind, and that he is a sexual pervert, it is probable that he may at any time develop a disposition to squander his property; second, that, for the same reasons, he may at any time commit wrongs such as to render him liable to respond in damages. As to the first proposition, it seems a sufficient answer to say that, should such disposition develop, a basis would be thereby at once furnished for the appointment of a guardian. It

1. GUARDIAN- SHIP: facts authorizing the appoint- ment.

may be that this amounts to waiting for the mischief to begin before taking steps to guard against it. But were a rule to the contrary to be established, there would be authorized the appointment of a guardian for any man who might be shown to be possessed of eccentricities or peculiarities of disposition, or addicted to immoral habits, and this notwithstanding in business matters he appears to be ordinarily cautious and sagacious. The question is not to be disposed of by invoking the principle that it is better to prevent than to wait and attempt to cure, however salutary that principle may be as applied to the conduct of business on the part of individuals, but, rather, upon the broad principle that no man shall be interfered with in his personal or property rights by the government, under the exercise of its parental authority, until the actual and positive necessity therefor is shown to exist. It would be dangerous doctrine indeed to say that because it is possible, or even probable, that a person named may at some time in the future act unwisely or without discretion in respect of his business affairs, therefore all control over his property shall be taken away from him and confided to the custody of a guardian. Especially would this be true as applied to the case of a person whose entire business career had been marked by at least ordinary thrift, prudence, and sagacity.

The second proposition advanced by counsel for appellants is wholly untenable. A guardianship would be no protection as against the consequences of willful wrongs committed. If, mentally considered, the person in question be responsible at all, and by reason of his unusually high temper, or yielding to the immoral tendency of his mind, he should be led into a violation of established rules of law, his estate would be equally liable, whether in his own possession, or in the possession of a guardian. If, on the other hand, the person in question be not mentally responsible, then in no event

2. SAME.

could his estate be charged with liability for wrongs committed by him involving the element of malice, inasmuch as there can be no such thing as malice where mental responsibility is wanting.

Such were the considerations, arising from the evidence found in the record, that prompted the trial court to refuse the appointment of a guardian upon the coming in of a verdict of the jury, and in accordance with the fact as found by such verdict. As to all the facts in the case, and as to the conclusions to be drawn therefrom in many respects, the trial court was in much better position to determine whether the verdict was warranted by the proof made, than we are. Taking the record as we find it, we cannot say that the refusal to appoint a guardian, and ordering a new trial, amounted to such an abuse of discretion as to demand at our hands an interference therewith. The order granting a new trial is accordingly AFFIRMED.