JAMES ARMENT, Appellant, v. ELIZABETH ARMENT.

Admission of evidence: HARMLESS ERROR. On the trial of a law
1    action to the court, it will be presumed that any error in admitting incompetent evidence is cured by a withdrawal of the same.

Guardianship: INSANITY: EVIDENCE. In a proceeding for the appointment of a guardian for a person of unsound mind, under
2    Code, section 3219, the evidence is reviewed and it is held that defendant was not in such mental condition as to require a guardian to manage and control her property.

*Appeal from Tama District Court.*— HON. OBED CASWELL,
Judge.

TUESDAY, MAY 7, 1907.

ACTION for the appointment of a guardian for defendant, under the provisions of Code, section 3219, on the ground that defendant was a person of unsound mind.

Plaintiff was appointed temporary guardian, but on trial to the court, a jury being waived, it was found that defendant was not of unsound mind, and not in such a condition mentally as to need a guardian to manage and control her property, and judgment was rendered for the defendant, from which plaintiff appeals.— *Affirmed.*

*J. R. Caldwell,* for appellant.

*Struble & Stiger,* for appellee.

McCLAIN, J.— The defendant is the widow of Isaac N. Arment, who died in 1892, and by will devised and bequeathed his real estate and personal property to this defendant, and to his son James who is the plaintiff, and to his daughter Elizabeth, since married to one Bolicheck. No provision for the elder son Levi was made in the will. At the time of the execution of the will deeds for the real estate devised to James and the daughter were executed by testator, in which the defendant joined. The personal property was distributed in accordance with the provisions of the will, and the estate was fully settled in 1894. The defendant, under the will, took title to the farm of about two hundred acres, which had constituted the homestead, and she already had in her own right a tract of eight acres of land. From 1892 until 1894 she remained on the home farm, her son James and her daughter living with her, and James assisted her in carrying on the farm. In 1894 James left home, and was soon after married, and in 1897 the older son Levi, who was married and had a farm of his own, and who as it is claimed was not provided for in the will because he had received previous advancements from his father, came with his wife to live with defendant, and look after her property for her. According to defendant's testimony Levi came to live on the home farm under some arrangement by which he was to maintain his mother during her lifetime,

and have the farm after her death.  But if this arrangement involved the deeding of the farm to Levi at this time, it was not carried out by defendant, and in 1898 Levi removed to his own farm, and the daughter, who had in the meantime been married, came with her husband to live with defendant, the son-in-law paying rent.  This arrangement continued for one year, when the daughter and her husband went back to their own farm, and Levi came again to look after defendant's farm for her.  At this time, as defendant testifies, a definite contract was made with Levi in pursuance of which a deed to him was executed and recorded, containing an assumption of the obligation to support defendant during life.  At the same time the personal property, consisting of stock and implements remaining on the farm and belonging to the defendant, were sold to Levi for a consideration of $1,500, for which two notes to defendant were executed by him.

The evidence for the plaintiff tends to show that defendant was more inclined to seek advice from Levi than from plaintiff, and that she depended upon Levi to look after such important matters of business for her as the sale of her stock while she was carrying on the farm, after plaintiff left her.  When it became known that she had deeded the farm to Levi much dissatisfaction was expressed by plaintiff and his sister as to this disposition by her of the principal part of her estate, and eventually a conference was held by the parties, at which their lawyers were present, with relation to the adjustment of their difficulties.  The testimony tends to show that prior to this conference defendant had consented that an effort be made to secure the return by Levi of the property which had been sold to him, provided it could be done without a lawsuit, but when proceedings in court were determined upon by plaintiff, the defendant refused to give any countenance thereto, and has resisted the appointment of a guardian for her.  The case is somewhat peculiar in that it is tried throughout on plain-

tiff's behalf on the theory that Levi procured the deed to defendant's farm by undue influence. And yet plainly that is not directly an issue in the case, for Levi is not a party to the proceeding, and plaintiff is in no situation to ask relief on that ground. But the evidence of undue influence is relied upon as tending to show the mental incapacity of the defendant. This was the question for decision by the lower court, and the evidence is to be reviewed with reference to that question alone.

Many errors are assigned on behalf of the plaintiff, as to the admission of statements of nonexpert witnesses in regard to defendant's mental capacity. If the testimony 1. ADMISSION OF thus admitted over objection was not receivable, EVIDENCE: the error in admitting it was cured by harmless the action of the lower court in accepting the error. withdrawal of all such evidence on the part of defendant. It is to be borne in mind that while the action is at law it was tried to the court without a jury, and we must assume that the court disregarded the evidence which was thus withdrawn.

But all the errors assigned for the appellant may be fully disposed of on another ground. It is contended for appellant that the evidence as to mental incapacity is such as to require a reversal of the finding of the lower court, while for appellee it is urged that there is an entire absence of any evidence on which the court could have found such mental incapacity. Now, if on consideration of the evidence presented in the record, we shall find that there was nothing tending to show such mental incapacity as would have justified a finding for plaintiff, then the assigned errors in the admission of testimony offered for appellee will be wholly immaterial, and may be disregarded. We proceed therefore briefly to state our conclusions as to the showing with reference to mental incapacity.

The witnesses for plaintiff, who testified to the conclusion that defendant was incapable of managing her property and

affairs, based such conclusions entirely upon the conduct of

2. GUARDIANSHIP: defendant in allowing her son Levi to dictate
insanity:
evidence.        her course of conduct with reference to her
property, and to have an undue advantage in its management and disposition. Plaintiff testifies that when the estate was settled in 1894 he paid over to Levi for his mother and sister two-thirds of the proceeds of certain cattle which he had sold as executor, and that Levi has never accounted to the mother and sister therefor. But we have no direct testimony that he has failed to account. The money belonged to the estate for distribution, and it does not appear that it was not applied to proper purposes. At any rate, the mother and sister made no complaint until this controversy arose, nearly ten years afterwards, and we think that the circumstance in itself has no bearing on the question whether defendant is incapable of managing her affairs. Plaintiff testifies as to interference on the part of Levi in the management of the farm, but, so far as he is specific, his testimony tends to show personal hostility between him and his brother rather than any interposition by Levi prior .o the deed of the farm to him by his mother. It does appear that two or three animals belonging to the mother were taken from the farm by Levi, with the mother's consent, but it also appears that she gave other property to the plaintiff without consideration.

It is claimed that the sale of the remaining personal property of the farm to Levi for a consideration of $1,500 was improvident, as the property was of the value of between $3,000 and $4,000. But we would hardly be justified in saying that the sale by the defendant to Levi of this property at less than its possible value was any evidence of mental incapacity. The defendant was giving up farming under an arrangement by which Levi was to support her for the balance of her life; and if she saw fit to give him some advantage in disposing of the property on the farm to him, it is hardly to be attributed to her as such recklessness

as to show that she did not realize the significance of her action. The deeding of the farm to Levi in consideration of an undertaking expressed in the deed that he should support her for the balance of her life was perhaps unwise as viewed from the standpoint of the experience of those who have made similar arrangements. But it was such an arrangement as is not uncommonly made, and defendant expresses her entire satisfaction with it. Certainly a mother, seventy-three years of age, who, confiding in the integrity and judgment of her oldest son, a man of experience and success in the management of his own property, intrusts her welfare and support to him, cannot be said to show a lack of reasonably sound judgment, and if he carries out his agreement to her own satisfaction, a court is not called upon to interfere in the interests of those who might in the absence of a disposition by her be entitled to share in her property after her death. None of the transactions which we have referred to tend, in our judgment, to show the want of mental capacity on the part of defendant. Certainly leniency and indulgence even to the extent of favoritism given to one son is not even presumptive proof of want of capacity on defendant's part. She had the right to give all her property to this one son if she saw fit, and even if her conduct indicated an intention to do so to the exclusion of other children, such intention is not open to criticism in a court. We are impressed with the thought that this whole controversy is one between children as to what their mother ought to do with the property as to which she has a complete right of disposition, and to say the least, such a controversy is unseemly. The fear on the part of plaintiff that the final result of his mother's action will be to deprive him and his sister of the opportunity to share equally with Levi will not justify his having a guardian for his mother while she is living; nor will a commendable anxiety as to whether she will be adequately provided for by Levi under his agreement require a court to appoint a guardian for his mother.

The principal contention, however, for the appellant, is that defendant as a witness showed her " illiteracy, her want of business experience, her incapacity to understand the simplest questions, her inability to give intelligent answers," and otherwise demonstrated her lack of capacity to understand and care for her business interests. In view of this broad contention, we have read in full the testimony of the defendant as set out in more than sixty pages of the abstract, largely by question and answer, and have been strongly impressed with the fact that defendant fully understands what she has done, and has acted with a perfectly rational and justifiable conception of her property interests and her relations to her children. She gives reasons which are entirely rational for her various acts, and explains in a perfectly intelligent manner the arrangement under which she deeded her farm and sold her personal property to Levi. The deed itself, containing covenants on the part of Levi to give her a home and furnish her adequate support during the remainder of her life, is explicit, and such as ought not to be set aside on any showing contained in this record, even if the question as to its validity were now before us for final determination. It is said for appellant that defendant showed her incapacity to understand business by thinking that a will which she proposed to execute, devising the farm to Levi, would not be valid unless he assented to it. But that will was proposed by defendant to Levi under the arrangement by which he was to come back to the farm and afford her a home there, and his consent to the will was therefore a material matter. It is further said that defendant indicated in her testimony the belief that the signature of Levi to the deed was essential. As this deed contained covenants on his part, it was certainly not an indication of serious mental weakness that defendant spoke of his having to sign it with the view of making it binding upon him.

Giving every possible weight to the contentions for ap-

pellant, and looking at the entire record for the purpose of seeing whether there is any evidence in behalf of plaintiff on which, if uncontradicted, the trial court could have made a finding in plaintiff's favor, we reach the conclusion that not even a *prima facie* case was made out for the appointment of a guardian for defendant. We have in other similar cases considered the sufficiency of the testimony offered to prove mental incapacity such as would require the appointment of a guardian on that ground, and find no warrant for such action under a state of facts in any way analogous to that disclosed by the record. See particularly, *Schick* v. *Stuhr*, 120 Iowa, 396; *Emerick v. Emerick*, 83 Iowa, 411.

For the reasons pointed out, it is unnecessary to consider the other allegations of error, and the judgment of the trial court is *affirmed*.