James McDermott v. Richard Rahely, Appellant.

Guardianship: MENTAL INCOMPETENCY: EVIDENCE. In this proceeding to appoint a guardian of an alleged incompetent, the evidence is reviewed and held insufficient to justify a finding that defendant was mentally incompetent to manage his own affairs.

*Appeal from Clinton District Court.*—Hon. D. V. Jackson, Judge.

Tuesday, March 15, 1910.

On November 18, 1908, the plaintiff filed a petition alleging defendant to be a person of unsound mind and incapable of managing his affairs, and prayed for the appointment of a guardian. A niece of defendant, averring herself his only full blood relative in this country, by way of petition of intervention, joined in the prayer. The defendant denied the allegations, and averred the proceedings to be a scheme to acquire possession of his property. Trial to the court resulted in the appointment of plaintiff guardian as prayed. The defendant appeals.—*Reversed.*

*Wolfe & Wolfe,* for appellant.

*R. C. Langan* and *A. L. Schuyler,* for appellee.

Ladd, J.—The defendant is over sixty years old, and was never married. His occupation is, and has been for thirty years past, that of "hired man." Because of his inability to handle other than gentle horses, or to manage the work assigned him, his wages have not exceeded half or two-thirds those paid an ordinary laborer. Previous to working for plaintiff, some thirteen years prior to the beginning of this action, he had saved nothing except in omitting the collection of wages from a woman by whom he had been employed. At that time plaintiff induced him to open an account and deposit his earnings with a local bank, and at the time of the trial these amounted to nearly $1,000. Some time before that an action for the wages referred to had been brought, but defendant was induced to settle the same for $100. This

settlement was set aside, however, because procured by fraud, and judgment recovered for $1,000. Two-fifths of this was retained by the attorneys as compensation for their services, and the remaining $600 deposited by the attorneys with defendant's niece for his benefit. He had no part in this last, and is not aware of the conditions under which the fund is held, save that upon being visited by him, his niece informed him that she would care for him, or that he might board it out in his old age. Prior to 1890 he deposited small amounts with his storekeeper, but during that year withdrew all save $15, and had not mentioned that since. A farmer for whom he had worked owed him about $80, though there had been no settlement. Another owed him a small sum, the amount of which he did not recollect. But there was no showing that any of these parties were not responsible, or that the circumstances were such as to indicate the probable loss of any items due him. If he took a team in payment of some of his earnings, he disposed of it at more than cost. The same may be said of his purchase of poultry. If he handed a deposit slip of $140 to a lady with the remark that she could buy a silk dress with it, this must have been in jest, for money might not have been drawn thereon. He may have been easily influenced, but the record contains no indication that because thereof he wasted his means. He deposited his passbook in a box in the safety vault of the bank, and, though having the key thereto, appears to have said to several persons that he had no book or anything save deposit slips to show for his money, and that about two-thirds of these were lost, but no claim is made that his funds were not properly accounted for by the bank. He believed in ghosts, and loved to recount Irish fairy tales as though real, and often as an eyewitness. Such are the circumstances said to indicate incapacity to manage his own affairs. That he was a cleanly, agreeable, simple-minded man is undisputed. That plain-

tiff has taken a kindly interest in him, and that in instituting these proceedings he has been actuated by the purest motives, this record bears convincing proof. But we do not think the evidence such as to justify depriving this man, even though possessing less than average mental ability, of the management of his own affairs. He is not addicted to any excesses. He is industrious, economical in his habits, and his savings are not said to be in jeopardy, even though he may rely on the integrity of his banker and the farmers in whose families he has lived more implicitly than might men of wider experience. According to the record his confidence does not appear to have been misplaced in recent years, and we think he should be accorded that liberty in managing his own affairs which all men so dearly prize, and in the exercise of which the greater number are relatively less successful. See *Emerick v. Emerick,* 83 Iowa, 411; *Schick v. Stuhrt,* 120 Iowa, 396.

The judgment of the district court is *reversed.*