BERNICE T. HAGINS v. REDEVELOPMENT COMMISSION OF GREENS-
BORO, NORTH CAROLINA, a Body Corporate

No. 683

(Filed 31 January 1969)

**1. Notice § 1— necessity for notice**
    The rule that parties to an action are fixed with notice of all motions or orders made during the term of court at which the cause is regularly calendared for trial unless actual notice is required by the constitution or statute must bend to embrace common sense and fundamental fairness.

**2. Judgments § 6; Trial § 30— vacating nonsuit judgments during term — notice to plaintiff**

During the term at which he enters judgments of nonsuit in plaintiff's actions, trial judge has the authority, upon his own motion and without giving notice, to vacate the nonsuits and to restore the cases to the docket; but in the absence of official notice that the cases have been reinstated, plaintiff is not charged with knowledge of any further proceedings in the cases.

**3. Infants § 5; Insane Persons § 2— next friend — guardian ad litem**

Although technically a next friend represents a plaintiff and a guardian *ad litem* represents a defendant, there is no substantial difference between the two, the class of persons for whom next friends and guardians *ad litem* may be appointed being the same. G.S. 1-64, G.S. 1-65.

**4. Insane Persons § 2— jurisdiction to appoint next friend for adult plaintiff**

An adult plaintiff who is not an idiot or lunatic must be *non compos mentis* before the court has jurisdiction to appoint a next friend for him.

**5. Notice § 1— necessity of notice in absence of statute**

Notwithstanding the silence of a statute, notice of motion is required where a party has a right to resist the relief sought by the motion and principles of natural justice demand that his rights be not affected without an opportunity to be heard.

**6. Insane Persons § 2— appointment of next friend — mental incapacity — notice and hearing**

When a party's lack of mental capacity is asserted and denied — and the party has not previously been adjudicated incompetent to manage his affairs — he is entitled to notice and an opportunity to be heard before the judge can appoint either a next friend or a guardian *ad litem* for him.

**7. Constitutional Law § 24; Damages § 5— due process — right to recover damages**

The right to recover damages for injury to one's property is no less a property right than the right to sell or use the property which was damaged.

**8. Attorney and Client § 3; Constitutional Law § 24— denial of litigant's right to conduct lawsuit**

Normally, a litigant has a fundamental right to select the attorney who will represent him in his lawsuit, to conduct his litigation according to his own judgment and inclination, and — if the case is to be compromised — to have it settled upon terms satisfactory to him; if this right is taken from him upon a factual finding which he disputes, fundamental fairness and the constitutional requirements of due process require that he be given an opportunity to defend and be heard.

**9. Insane Persons § 2— appointment of next friend — notice**

A person for whom a next friend or guardian *ad litem* is proposed is entitled to notice as in case of an inquisition of lunacy under G.S. 35-2,

and, by analogy to G.S. 1-581, ten days' notice is appropriate unless the court, for good cause, should prescribe a shorter period.

**10. Insane Persons § 2— appointment of next friend — necessity for hearing**

Where the party for whom a next friend or guardian *ad litem* is proposed does not deny at the hearing the allegation that he is incompetent, and the judge is satisfied that the application is made in good faith and that the party is *non compos mentis*, the judge may proceed to appoint a next friend to act for him; but if the party asserts his competency, he is entitled to have the issue determined as provided in G.S. 35-2.

**11. Insane Persons § 2— appointment of next friend — validity of appointment**

Where plaintiff has had neither notice that her competency to manage her affairs was challenged nor an opportunity to be heard on the issue, order of trial court appointing an attorney as her next friend is void, and the attorney's settlements of her actions against a redevelopment commission for the destruction of her property are not binding upon her, notwithstanding they were approved by the court.

**12. Insane Persons § 2— necessity for next friend — cases of emergency**

An inquisition is not always a condition precedent for the appointment of a next friend or a guardian *ad litem*, as where, in an emergency, it is necessary, *pendente lite*, to safeguard the property of a person *non compos mentis* whose incompetency has not been adjudicated.

**13. Insane Persons § 2— appointment of next friend — criterion of mental incompetency**

The law will not deprive a person of the control of his lawsuit or his property unless he is "incompetent from want of understanding to manage his own affairs," G.S. 35-2; the words "affairs" encompasses a person's entire property and business — not just one transaction or one piece of property to which he may have a unique attachment.

**14. Insane Persons § 2— appointment of next friend — criterion of mental incompetency**

Incompetency to administer one's property depends upon the general frame and habit of mind and not upon specific actions such as may be reflected by eccentricities, prejudices, or the holding of particular beliefs.

**15. Insane Persons § 2— appointment of next friend**

To authorize the appointment of next friend or guardian *ad litem* it is not enough to show that another might manage a man's property more wisely or efficiently than he himself.

**16. Constitutional Law § 21— incident of private property — right to expend for lost causes**

It is one of the incidents of the cherished right of private property that ordinarily an individual may expend his property in fighting a lost cause or for any legal purpose whatever.

**17. Insane Persons § 2— "incompetent from want of understanding to manage his own affairs"**

It is not possible to frame a definition of the phrase "incompetent from want of understanding to manage his own affairs," G.S. 35-2, which will include every aberration which might produce the incompetency to which reference is made.

**18. Insane Persons § 2— essentials of mental incompetency**

A person is incompetent to manage his affairs if his mental condition is such that he is incapable of transacting the ordinary business involved in taking care of his property and if he is incapable of exercising rational judgment and weighing the consequences of his acts upon himself, his family, his property and estate. G.S. 35-2.

**19. Insane Persons § 2— essentials of mental competency**

If a person understands what is necessarily required for the management of his ordinary business affairs and is able to perform those acts with reasonable continuity, if he comprehends the effect of what he does, and can exercise his own will, he is not lacking in understanding within the meaning of the law and he cannot be deprived of the control of his litigation or property. G.S. 35-2.

APPEAL by plaintiff from the decision of the Court of Appeals (reported in 1 N.C. App. 40, 159 S.E. 2d 584) affirming the judgment of *Crissman, J.*, entered at the 2 October 1967 Civil Session of GUILFORD, Greensboro Division.

Plaintiff-landowner (Hagins) instituted this action to recover $407,460.00 as damages for the premature destruction of buildings upon her two lots, subsequently condemned by defendant, Redevelopment Commission of Greensboro, North Carolina (Commission). The chronicle of Commission's attempts to acquire Hagins' property for the purpose of slum clearance is fully set out in *Redevelopment Commission v. Hagins*, 258 N.C. 220, 128 S.E. 2d 391; *Redevelopment Commission v. Hagins*, 267 N.C. 622, 148 S.E. 2d 585, *cert. denied*, 385 U.S. 952, 17 L. Ed. 2d 230, 87 S. Ct. 332.

Commission's efforts to acquire plaintiff's property began on 7 August 1961, when it instituted condemnation proceedings under the "Urban Redevelopment Law," G.S. 160-454 *et seq.* Hagins, in an answer which she herself prepared, alleged that her buildings were not dilapidated and that Commission had no power to condemn her land. The Superior Court, after extensive hearings, upheld Commission's right of eminent domain and, at the 26 April 1962 Session, adjudged that title to the premises be transferred to Commission. Upon Hagin's appeal, this Court held that Commission's petitions were fatally defective and reversed the judgment of the Superior Court. *Redevelopment Commission v. Hagins*, 258 N.C. 220, 128 S.E. 2d

391 (filed 12 December 1962). While that appeal was pending, on or about 24 May 1962, Commission demolished the buildings upon Hagins' lots.

On 14 January 1963, Commission brought a second condemnation proceeding to acquire title to Hagins' lots. Thereafter, on 14 May 1963, plaintiff began this action to recover both compensatory and punitive damages from Commission for the destruction of the improvements upon the lots.

Before razing the buildings, Commission had the personal property located therein removed and stored by corporations which are, along with Commission, defendants in two other actions instituted by Hagins: *Hagins v. Aero Mayflower Transit Co., Inc., Champion Storage & Trucking Co., Inc., & Redevelopment Commission of Greensboro,* and *Hagins v. South Atlantic Bonded Warehouse Corporation, Allied Van Lines, Inc., Redevelopment Commission of Greensboro.* These two cases, also before us on appeal (Nos. 684 & 685), involve the same question herein presented. Hagins instituted a fourth suit (Superior Court Docket No. 5045) against the Sheriff of Guilford County, two of his deputies, and the surety on his official bond to recover damages for the removal of her property. This case is not before us.

In Commission's second condemnation proceeding the jury awarded Hagins $3,000.00 as just compensation for the *land* embraced within the boundaries of the two lots. From the judgment on the verdict, Hagins appealed. In a decision, filed 16 June 1966 and reported in 267 N.C. 622, 148 S.E. 2d 585, we held this proceeding to be valid and affirmed the judgment decreeing that Commission had acquired fee simple title to the lots. That opinion noted the pendency of this action for damages.

This and the three other cases enumerated above were calendared for trial 23 January 1967, Monday of the second week of a two weeks' civil session. On that day Hagins' counsel, Samuel S. Mitchell and Earl Whitted, Jr., informed the presiding judge, Honorable Walter E. Crissman, that Hagins had notified them she was sick and unable to attend court. However, on the following morning, 24 January 1967, she was present at the opening of court and presented Judge Crissman with a letter in which she complained that her two attorneys had failed to keep her informed of developments in her litigation. She requested the judge to dismiss them from her case and to require them to return the fee which she had paid them. In response to the court's direct question, she said she was firing her lawyers. With reference to events occurring immediately thereafter, the

agreed case on appeal recites that, "after the discharge of her counsel," the court advised Hagins that she could proceed with the trial of this action. When she replied that she was not prepared to proceed to trial, Judge Crissman entered a judgment of nonsuit in this and the other three cases. At the same time he advised Hagins that she would have one year from the date of the nonsuit in which to reinstitute the actions if she desired to do so.

On 25 January 1967, Attorneys Whitted and Mitchell each filed an affidavit with the Superior Court. Whitted averred that Hagins could not accept the fact that Commission had condemned her land; that she was not interested in compensation but only in recovering her land. In his opinion, "Hagins has a fixation about this case beyond which she will not go; that she will neither listen to the advice of counsel nor to reason or understanding; that she is both illogical and incapable of handling her affairs in this matter." Mitchell averred that he had found Hagins "to be mentally aware and alert in all matters, excepting in regards to her relationship to her land, which was recently condemned . . ."; that with reference to her claims arising out of the condemnation proceedings he had found her "to be totally irrational"; that she has neither the willingness nor the capacity to understand the effect of the judgment of nonsuit which the court had entered; that he and his associate had many times attempted to explain these circumstances to her; that she "is so obsessed with the repossession of her condemned land that her ability to manage her claims for damages for the taking is nonexistent."

On 26 January 1967, in the exercise of his discretion and without notice to Hagins, Judge Crissman set aside the judgment of nonsuit in this and the other three cases and continued them for the term. On the same day, in an order reciting that he acted upon the affidavits filed by Mitchell and Whitted, upon his own observation of Hagins, and upon certain other facts (evidence of which does not appear in the record), Judge Crissman found "that the Plaintiff in this action is completely incapable of protecting her own rights, is ignorant of court procedure, and that her actions have been detrimental to her own interests; . . . (that) the Court Ex Mero Motu finds it imperative to appoint a next friend for this Plaintiff to look after and manage her affairs in the present litigation." He thereupon appointed Joseph Franks, Jr. (Franks), next friend for Hagins in this and the other three cases "for the sole purpose of inquiring into her cause of action, to consider all elements of damage and offers to settle, to pursue all remedies offered by law to the end that Plain-

tiff's property and personal rights are protected in full, and that her best interests be protected, as provided by law."

The record discloses that "the plaintiff did not know of this action by the court until the following Monday when she read it in the newspaper." At that time the term of court at which Judge Crissman's orders had been made had ended.

On 10 March 1967, Joseph Franks, Jr., filed an affidavit in which he reported to the court the following information: On 30 January 1967, he had advised Hagins by telephone that the court had appointed him next friend to protect her interest in her four actions. He had attempted to confer with her, but she kept no appointment made for that purpose. After making a thorough investigation into the law and facts pertaining to her pending suits, the details of which he enumerated, he had conferred with the attorneys for the defense and had entered into negotiations with Commission for a settlement. Commission had offered to pay the costs of the actions, to pay Hagins $40,000.00 in full settlement of all of her claims against it, and to pay South Atlantic Bonded Warehouse Corporation $2,235.23, and to pay Champion Storage & Trucking Company $617.62 for moving and storage bills. In Frank's opinion, this was a fair and reasonable settlement and in Hagins' best interest. In his opinion, Hagins had no cause of action against the Sheriff of Guilford County (Case No. 5045). He recommended to the court (1) that he be authorized to accept Commission's offer of settlement; (2) that the cases against South Atlantic Bonded Warehouse Corporation and Allied Van Lines, Inc., Aero Mayflower Transit Company, Inc., and Champion Storage & Trucking Company, Inc., be retained on the trial docket for final disposition; (3) and that Case No. 5045 be nonsuited.

On the day he filed the foregoing affidavit, Franks mailed a copy to Hagins, together with a copy of the order of 26 January 1967 appointing him her next friend. He also informed her by letter that, on 15 March 1967 at 9:30 a.m., he would appear before Judge Crissman and ask him to approve the proposed settlement. He requested her to be present. She did not appear.

On 17 March 1967, acting upon the affidavit and recommendation of Franks, Judge Crissman signed a judgment approving the proposed settlement and decreeing that upon Commission's payment of $40,000.00 into the court for the use and benefit of Hagins, of $2,235.23 to Atlantic Bonded Warehouse Corporation, of $617.62 to Champion Storage & Trucking Company, Inc., and the cost of the action, Commission would be released from all liability to Hagins

in this and any other actions growing out of the taking of her property.

On 21 March 1967, Franks mailed Hagins a copy of the judgment and advised her by letter that, in addition to the payments specified in the judgment, Commission would pay all fees which she owed Mitchell and Whitted; that Franks' compensation as next friend would be deducted from the $40,000.00 which she had recovered; and that Case No. 5045 had been nonsuited. He also advised her that Commission would no longer be responsible for the cost of storing her personal property in the storage warehouses.

Thereafter, Franks petitioned the court for an allowance for his services as next friend. He mailed Hagins a copy of the petition and notified her that, on 14 April 1967 at 9:30 a.m., he would present the petition to Judge Crissman. On 18 May 1967, Judge Crissman signed an order allowing Franks a fee of $1,000.00 for his services in negotiating the settlement.

On 20 June 1967, through her present counsel, Comer and Harrelson, Hagins filed a motion to vacate the appointment of Franks as her next friend, together with all judgments and orders entered subsequent to his appointment on 26 January 1967. She asserted that his appointment and subsequent actions were void because, in violation of the due-process clause of the Fourteenth Amendment and Section 17, Article I of the Constitution of North Carolina, (1) he was appointed without notice to her and without a judicial determination that she was an idiot, lunatic or person *non compos mentis;* (2) she was *sui juris* and is now, and was then, capable of managing her affairs; (3) the settlement of her claim of $407,460.00 against Commission for $40,000.00 deprived her of her property without due process of law.

This motion came on for hearing before Crissman, J., at the 2 October 1967 Civil Session. He denied the motion, and Hagins appealed to the Court of Appeals, which affirmed his judgment. From its decision Hagins appealed to this Court as a matter of right.

*Comer & Harrelson for plaintiff appellant.*

*Cannon, Wolfe, Coggin & Taylor for defendant appellee.*

SHARP, J.

Plaintiff Hagins asserts (1) that she was deprived of due process when the court, after nonsuiting her four cases and advising her that she would have one year in which to reinstitute the actions, va-

cated the judgments of nonsuit and, without notice to her, appointed Franks as her next friend; and (2) that Franks' appointment was void and his purported settlement of her cases, although approved by the court, is not binding upon her.

Defendant's position is (1) that plaintiff was charged with notice of the orders vacating the judgments of nonsuit and appointing Franks as her next friend because they were entered during the term at which the cases were calendared for trial; (2) that the judge was not required to give plaintiff notice that he, *ex mero motu,* was contemplating the appointment of a next friend to conduct her litigation; (3) that G.S. 1-64 empowered the judge to make the appointment upon any evidence or facts coming to his attention which convinced him she was not competent to manage her litigation; and (4) that the law authorized the next friend, with the court's approval, to settle plaintiff's litigation.

This crucial question is presented: Was plaintiff entitled to actual notice and an opportunity to be heard upon the issue of her mental competency before the judge was empowered to appoint a next friend to take charge of her litigation?

[1]    If the answer to the foregoing question is YES, the fact that the order appointing the next friend was made at term is irrelevant. However, at the outset, we deem it desirable to dispose of defendant's first contention. In doing so we note the two well-established rules of practice and procedure upon which defendant relies: (1) During a term of court all judgments and orders are *in fieri,* and, except for those entered by consent, may be opened, modified, or vacated by the court upon its own motion. *Shaver v. Shaver,* 248 N.C. 113, 102 S.E. 2d 791; *Hoke v. Greyhound Corporation,* 227 N.C. 374, 42 S.E. 2d 407; 5 N.C. Index 2d, Judgments § 6 (1968). (2) Unless actual notice of a particular motion is required by the constitution or statute, parties to an action are fixed with notice of all motions or orders made during the term of court at which the cause is regularly calendared for trial. *Insurance Co. v. Sheek,* 272 N.C. 484, 158 S.E. 2d 635; *Speas v. Ford,* 253 N.C. 770, 117 S.E. 2d 784; *Collins v. Highway Commission,* 237 N.C. 277, 74 S.E. 2d 709; *Harris v. Board of Education,* 217 N.C. 281, 7 S.E. 2d 538. This rule with reference to constructive notice, however, bends to embrace common sense and fundamental fairness. For instance, in *Long v. Cole,* 74 N.C. 267, an order made at term was subsequently set aside, "the order being made at midnight, when the plaintiff was absent, and did not know, and had no reason to believe that the Court

was in session, and his counsel not being able to attend. . . ." *Id.* at 269. See also *Sircey v. Rees,* 155 N.C. 296, 71 S.E. 310.

[2]   Under rule (1) noted above, during the term at which he had entered the judgments of nonsuit, Judge Crissman had the authority, upon his own motion and without giving notice, to vacate the nonsuits and to restore the cases to the docket. *See Collins v. Highway Commission, supra* at 282, 74 S.E. 2d at 714. Hagins, however, was entitled to immediate official notice that the cases had been reinstated. In the absence of such notice she was not charged with knowledge of any further proceedings in the cases. Between the time the actions were nonsuited and reinstated they were no longer pending, *Burton v. Reidsville,* 243 N.C. 405, 90 S.E. 2d 700, and plaintiff was not required to maintain a constant vigil until the court adjourned for the term lest the judgments of nonsuit be vacated without notice to her. As Ervin, Jr., pointed out in *Collins v. Highway Commission, supra,* if the law "is to be a practical instrument for the administration of justice," it cannot "require parties to abandon their ordinary callings, and dance 'continuous or perpetual attendance' on a court" simply because they have a case pending, *Id.* at 281, 74 S.E. 2d at 713 — a fortiori, if the case has been terminated by a judgment of nonsuit and is no longer pending.

Preliminary to a consideration of the question presented, we correlate the facts: Hagins is an adult. She denies that she is incompetent. She has never been committed to a mental hospital. She has never been adjudged insane in any civil or criminal action nor has she been adjudged incompetent from want of understanding to manage her affairs in a proceeding under G.S. 35-2. She is not an inebriate. All the evidence tends to show that, if she is mentally disordered or lacks mental capacity, her want of understanding is confined to *one* subject — her land and Commission's power to condemn it. On this subject, her former attorneys declare that she is "totally irrational" and "is so obsessed with the repossession of her condemned land" that she has "neither the willingness nor the capacity to understand" and manage her claims for damages; as to all other matters, she is "mentally aware and alert."

We next consider the applicable statutes. G.S. 1-64 provides in pertinent part: "In actions and special proceedings when any of the parties plaintiff are infants, idiots, lunatics, or persons non compos mentis . . . they must appear by their general or testamentary guardian, if they have any within the State; but . . . if there is no such guardian, then said persons may appear by their next friend. . . ."   G.S. 1-65 authorizes the court to appoint a guardian *ad*

*litem* for any defendant who is an infant, idiot, lunatic, or person *non compos mentis* and without a general guardian.

The only stated procedure for the appointment of a next friend appears in Superior Court Rule 16, "Next Friend — How Appointed: In all cases where it is proposed that infants shall sue by their next friend, the court shall appoint such next friend, upon the written application of a reputable, disinterested person closely connected with such infant; but if such person will not apply, then, upon the like application of some reputable citizen; and the court shall make such appointment only after due inquiry as to the fitness of the person to be appointed." N.C. Gen. Stat. Vol. 4A, p. 204 (1955).

Chapter 35, Article 2, of the N. C. General Statutes provides for guardianship and management of the estates of incompetents. In behalf of a person deemed "a mental defective, inebriate, or mentally disordered or incompetent from want of understanding to manage his own affairs," G.S. 35-2 authorizes any person to file with the Clerk of the Superior Court of the county in which the "supposed mentally disordered person" resides a duly verified petition setting forth the facts. Thereafter, "upon notice to the supposed mental defective," a jury of twelve inquires into the mental state of the alleged incompetent. If the jury finds him "to be a mental defective," the Clerk proceeds to appoint a guardian for him.

G.S. 35-2.1 authorizes the Clerk to appoint a guardian or trustee for any person whom a jury, in either a criminal or a civil case, has found to be insane or incompetent to conduct business. G.S. 35-3 empowers the Clerk to appoint a guardian for any "idiot, lunatic, or insane person" confined in a State-supervised hospital for the insane upon the certificate of its superintendent declaring such person "to be of insane mind and memory or mentally retarded." However, before any person can be committed to a mental hospital, over his or his family's objection, G.S. 122-58 declares that he must be given a hearing as provided in G.S. 122-63.

From the foregoing statutes, it is apparent that the jurisdictional facts which would authorize the Clerk of the Superior Court to appoint a general guardian or trustee for plaintiff do not exist. What facts will authorize the judge to appoint a next friend?

[3, 4]    In *Orr v. Beachboard*, 199 N.C. 276, 154 S.E. 311, after the defendant had filed answer, he was adjudged insane and committed to the State Hospital. Therein he recovered his sanity and was officially discharged from the hospital as cured. Approximately one month thereafter the court appointed a guardian *ad litem* for him

under C.S. 451 (now G.S. 1-65). In holding the appointment of the guardian *ad litem* void and the acts not binding upon the defendant, this Court said: "C.S., 451, empowers the court to appoint a guardian *ad litem* for infants, idiots, lunatics, or persons *non compos mentis*. . . . [A]t the time the guardian *ad litem* was appointed the defendant did not fall within the classification provided in the statute, and there was no authority or warrant of law for such appointment." *Id*. at 278, 154 S.E. at 312. Although technically a next friend represents a plaintiff and a guardian *ad litem* represents a defendant, we note that there is no substantial difference between the two. 44 C.J.S. *Insane Persons* § 140 (1945). The respective classes of persons for whom next friends and guardians *ad litem* may be appointed are the same. G.S. 1-64 and 1-65.

[4]    The effect of *Orr v. Beachboard* is that an adult plaintiff who is not an idiot or lunatic must be *non compos mentis* before the court has jurisdiction to appoint a next friend for him. How, then, must the incompetency of a party-litigant be established in order to meet constitutional requirements of due process?

Neither G.S. 1-64 nor Superior Court Rule 16 contains any provision for notice to the party for whom it is suggested that a next friend be appointed. Furthermore, no procedure is specified for adjudicating a dispute over a party's infancy or his competency to conduct his litigation. Perhaps the explanation for these omissions is (1) the fact of infancy is rarely disputed and, if it is, age can ordinarily be established by an official record, and (2) a person *non compos mentis* who owns property will ordinarily be represented by a general guardian. Neither a next friend nor a guardian *ad litem* has authority to receive money or administer the litigant's property. His powers are coterminous with the beginning and end of the litigation in which he is appointed. *Teele v. Kerr*, 261 N.C. 148, 134 S.E. 2d 126.

[5, 6]    Notwithstanding the silence of a statute, "notice of motion is required where a party has a right to resist the relief sought by the motion and principles of natural justice demand that his rights be not affected without an opportunity to be heard. . . ." 60 C.J.S. *Motions and Orders* § 15 (1949). "[F]rom the earliest times the common law and the course of the legislation in common-law states has guarded sedulously the right of persons accused of incompetency of any kind to traverse the inquisition or other proceeding in the nature of one de lunatico inquirendo." *In Re Haynes' Will*, 143 N.Y.S. 570, 572 (1913). *See also Abrons v. Abrons*, 24 A.D. 2d 970, 265 N.Y.S. 2d 381 (1965). It is clear, therefore, that when a

party's lack of mental capacity is asserted and denied — and he has not previously been adjudicated incompetent to manage his affairs — he is entitled to notice and an opportunity to be heard before the judge can appoint either a next friend or a guardian *ad litem* for him. See *Surety Co. v. Sharpe*, 232 N.C. 98, 104, 59 S.E. 2d 953, 597; *McMillan v. Robeson County*, 262 N.C. 413, 417, 137 S.E. 2d 105, 108; Annot., 23 A.L.R. 594 (1923).

**[7, 8]** The right to recover damages for injury to one's property is no less a property right than the right to sell or use the property which was damaged. Normally, a litigant has a fundamental right to select the attorney who will represent him in his lawsuit, to conduct his litigation according to his own judgment and inclination, and — if the case is to be compromised — to have it settled upon terms which are satisfactory to him. If this right is taken from him upon a factual finding which he disputes, fundamental fairness and the constitutional requirements of due process require that he be given an opportunity to defend and be heard. *Graham v. Graham,* 40 Wash. 2d 64, 240 P. 2d 564 (1952). Accord, *East Paterson v. Karkus,* 136 N.J. Eq. 286, 41 A. 2d 332 (1945); 44 C.J.S. *Insane Persons* § 143(b), p. 308 (1945). "Where the claim or defense turns upon a factual adjudication, the constitutional right of the litigant to an adequate and fair hearing requires that he be apprised of all the evidence received by the court and given an opportunity to test, explain, or rebut it." *In Re Custody of Gupton,* 238 N.C. 303, 304, 77 S.E. 2d 716, 717-18; Accord: *In Re Wilson*, 257 N.C. 593, 126 S.E. 2d 489; *Eason v. Spence*, 232 N.C. 579, 61 S.E. 2d 717.

**[9, 10]** It follows, therefore, that a person for whom a next friend or guardian *ad litem* is proposed is entitled to notice as in case of an inquisition of lunacy under G.S. 35-2. This statute does not specify the time but, by analogy to G.S. 1-581, ten days' notice would be appropriate unless the court, for good cause, should prescribe a shorter period. If, at the time appointed for the hearing, the party does not deny the allegation that he is incompetent, and the judge is satisfied that the application is made in good faith and that the party is *non compos mentis*, the judge may proceed to appoint a next friend to act for him. If, however, he asserts his competency, he is entitled to have the issue determined as provided in G.S. 35-2. See *Graham v. Graham, supra; East Paterson v. Karkus, supra; Kalanianaole v. Liliuokalani*, 23 Haw. 457 (1916).

**[11]** Plaintiff Hagins has had neither notice that her competency to manage her affairs was challenged nor an opportunity to be heard on the issue. Consequently, the order appointing Franks as her next

friend was void and his settlements of her actions, notwithstanding they were approved by the court, are not binding upon her.

The cases of *Moore v. Lewis*, 250 N.C. 77, 108 S.E. 2d 26; *Abbott v. Hancock*, 123 N.C. 99, 31 S.E. 268; *Smith v. Smith*, 106 N.C. 498, 11 S.E. 188; and *Tate v. Mott*, 96 N.C. 19, 2 S.E. 176, cited by defendant as authority for its contention that an inquisition to determine sanity was not a condition precedent to the appointment of a next friend for Hagins, involve factual situations not comparable to those we have considered. The holdings do not conflict with decision here.

In *Moore v. Lewis, supra* (a proceeding for partition), a guardian *ad litem* had been appointed for Lewis upon the affidavit of a disinterested person. Notwithstanding, Lewis employed counsel of his own choosing and filed an answer. Thereafter he defended the action in his own name, and the guardian *ad litem* took no further part in the proceedings. Upon appeal Lewis contended, *inter alia*, that the order appointing a guardian *ad litem* for him was invalid and rendered all subsequent proceedings void. This Court, while specifically recognizing the right of an alleged incompetent who objected to the appointment of a guardian *ad litem* to be heard with respect to his need for one, held that the failure of the court, *ex mero motu*, to enter an order vacating the appointment was immaterial, since the defendant, and not the guardian *ad litem*, had actually defended the case. In *Abbott v. Hancock, supra*, the attack upon the appointment of a next friend for the plaintiff was made by the defendant, whose demurrer admitted that the plaintiff was insane and confined in an asylum. In *Smith v. Smith, supra*, the plaintiff himself did not contest the appointment of his next friend, and *Tate v. Mott, supra*, involved only minors.

[12]    Situations comparable to the one presented by the instant case will not often arise. Upon the facts of this case we hold that an inquisition must be held before the court can appoint a next friend for plaintiff Hagins. However, an inquisition is not always a condition precedent for the appointment of a next friend or a guardian *ad litem*. In an emergency, when it is necessary, pendente lite, to safeguard the property of a person *non compos mentis* whose incompetency has not been adjudicated, the protection of the court may be invoked in his behalf by one acting as next friend. The reasons for allowing this procedure are well stated by Sir G. Jessel, M. R., in *Jones v. Lloyd*, 18 L.R. Eq. 268 (1874): "If this were not the law, anybody might at his will and pleasure commit waste on a lunatic's property or do damage or serious injury and annoyance

to him or his property, without there being any remedy whatever. . . . [E]verybody knows it takes a considerable time to make a man a lunatic by inquisition, and his family sometimes hesitate about making him a lunatic, or hope for his recovery, and take care of him in the meantime without applying for a commission in lunacy. Is it to be tolerated that any person can injure him or his property without there being any power in any Court of justice to restrain such injury? Is it to be said that a man may cut down trees on the property of a person in this unfortunate state, and that because no effort of his can be made, no member of his family can file a bill in his name as a next friend, to prevent that injury? Is it to be allowed that a man may make away with the share of a lunatic in a partnership business, or take away the trust property in which he is interested, without this Court being able to extend its protection to him by granting an injunction at the suit of the lunatic by a next friend, because he is not found so by inquisition? I take it those propositions, when stated, really furnish a complete answer to the suggestion that he cannot maintain such a suit." *Id.* at 275. See *Smith v. Smith, supra* at 503, 11 S.E. at 189, where a portion of the above quotation appears.

Obviously, however, it is ordinarily desirable that an incompetent's litigation be conducted by a general guardian, who, being in control of all his ward's affairs, can relate the effect of the litigation to the incompetent's entire estate.

[13]   We, of course, express no opinion as to whether plaintiff is incompetent to manage her litigation. However, an application for the appointment of a next friend or a general guardian may yet be made for her. Therefore, in view of the assertion that plaintiff's want of understanding is confined to only one subject — her land, which Commission has condemned — we deem it appropriate to consider when a person is *non compos mentis* within the meaning of G.S. 1-64 and G.S. 35-2. While there are varying degrees of mental inadequacy, the law will not (and should not) deprive a person of the control of his lawsuit or his property unless he is "incompetent from want of understanding to manage his own affairs." This is the criterion fixed by G.S. 35-2, and we understand the word *affairs* to encompass a person's entire property and business — not just one transaction or one piece of property to which he may have a unique attachment.

[14, 15]   Incompetency to administer one's property "obviously depends upon the general frame and habit of mind, and not upon specific actions, such as may be reflected by eccentricities, prejudices,

or the holding of particular beliefs." 29 Am. Jur. *Insane Persons* § 7 (1960). Eccentricity, like profligacy, may coexist with the ability to manage one's property. Likewise, to authorize the appointment of next friend or guardian *ad litem,* it is not enough to show that another might manage a man's property more wisely or efficiently than he himself. Annot., 9 A.L.R. 3d 774 (1966).

[16]    Many a man has prosecuted a lawsuit to his detriment or ruin, his ordinary caution and good judgment warped by prejudice, spite, or a stubborn purpose to vindicate "the principle of the thing." His attorneys and the court may have been entirely convinced that he was blindly and contumaciously refusing to settle his case upon terms which were obviously advantageous to him — and they may have been right. Yet "no man shall be interferred with in his personal or property rights by the government, under the exercise of its parental authority, until the actual and positive necessity therefor is shown to exist." *Schick v. Stuhr,* 120 Iowa 396, 398, 94 N.W. 915, 916 (1903). It is one of the incidents of the cherished right of private property that ordinarily an individual may expend his property in fighting a lost cause or for any legal purpose whatever.

[17]    We have found no completely satisfactory definition of the phrase "incompetent from want of understanding to manage his own affairs." Furthermore, we do not believe it is possible to frame a definition which will include every aberration which might produce the incompetency to which reference is made. The facts in every case will be different and competency or incompetency will depend upon the individual's "general frame and habit of mind." As pointed out in *In Re Anderson,* 132 N.C. 243, 43 S.E. 649, mere weakness of mind will not be sufficient to put a person among those who are incompetent to manage their own affairs. At the time *Anderson* was decided The Code § 1670 (now, as amended, G.S. 35-2) applied to "an idiot, inebriate, or lunatic, or incompetent from want of understanding to manage his own affairs." In 1945, the legislature deleted the words "idiot" and "lunatic" from the statute and substituted therefor "mental defective" and "mentally disordered" respectively. S.L. 1945 Ch. 952. Therefore, the statement in *Anderson* that the fourth class of persons listed in The Code § 1670 were "embraced under the head of lunatics" and that "their want of understanding in order to render them incompetent to manage their own affairs must be complete" is no longer correct.

[18, 19]    Under G.S. 35-2, as presently written, if a person's mental condition is such that he is incapable of transacting the ordinary business involved in taking care of his property, if he is incapable

of exercising rational judgment and weighing the consequences of his acts upon himself, his family, his property and estate, he is incompetent to manage his affairs. On the other hand, if he understands what is required for the management of his ordinary business affairs and is able to perform those acts with reasonable continuity, if he comprehends the effect of what he does, and can exercise his own will, he is not lacking in understanding within the meaning of the law, and he cannot be deprived of the control of his litigation or property. *See* Annot., 9 A.L.R. 3d 774 (1966); *Schick v. Stuhr, supra.*

For the errors specified herein, the decision of the Court of Appeals is reversed, and the cause is remanded to that Court with the direction that it vacate the judgment of the Superior Court from which plaintiff appealed and remand the case to that court for such further proceedings, consistent with the legal principles herein enunciated, as may be initiated.

Error and remanded.