IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-99

Filed 5 November 2025

Person County, Nos. 23JT000013-720, 23JT000014-720

IN THE MATTER OF: A.T. & E.T.

Appeal by Respondent-Parents from Order entered 13 September 2024 by Judge Adam S. Keith in Person County District Court. Heard in the Court of Appeals 24 September 2025.

*Lisa Noda for Respondent-Appellant Father.*

*Patricia M. Propheter for Respondent-Appellant Mother.*

*No brief filed for Petitioner Person County Department of Social Services.*

*Womble Bond Dickinson (US) LLP, by Reid C. Adams, Jr., and Caitlin T. Augerson, for Guardian ad litem.*

HAMPSON, Judge.

## Factual and Procedural Background

Respondent-Parents appeal from an Order terminating their parental rights in Adeline and Elena.[1] The Record before us tends to reflect the following:

On 6 April 2023, pursuant to neglect petitions filed by Person County

---

[1] Pseudonyms agreed upon by the parties.

Department of Social Services (DSS), Adeline and Elena were adjudicated neglected juveniles.[2] In the Adjudication and Disposition Order, the trial court found DSS had received a report on 21 February 2023 alleging Respondent-Parents had been evicted from their home and were living in their vehicle with the juveniles. The trial court further found DSS had made contact with Respondent-Parents the following day and had taken the juveniles into custody after learning the family had "very limited income[,]" "did not have clothes for [Elena] and . . . only had dirty clothes for [Adeline][,]" and the children were sleeping in car seats which "were observed to be extremely dirty with old vomit on them with a very strong odor." Based on these findings, the trial court adjudicated the children neglected juveniles and ordered Respondent-Parents to develop a case plan with DSS.

As part of their case plan, DSS directed Respondent-Parents to undergo comprehensive psychological evaluations. Respondent-Mother's evaluation indicated "significant psychological problems" and diagnoses of borderline personality disorder, cannabis use disorder, and posttraumatic stress disorder. As to Respondent-Father, the evaluation indicated diagnoses of cannabis use disorder and either bipolar disorder or schizoaffective disorder. Respondent-Father, but not Respondent-Mother, was also administered an additional test to "gather information about his levels of academic functioning[.]" The results of this test indicated Respondent-Father was

---

[2] The trial court's Order was not entered until 19 October 2023.

"not subject to cognitive limitations or learning disabilities that could complicate his case." The evaluating physician recommended "stable housing, mental health treatment, psychiatric medication" and discontinuing "abusing illicit substances[ ]" for both Respondent-Mother and Respondent-Father.

An initial permanency planning hearing was held on 1 June 2023. A permanency planning review hearing was scheduled for 16 November 2023. On that day, the hearing was continued until 7 December 2023. In the accompanying Continuance Order, the trial court indicated it had "reviewed [Respondent-Parents' psychological evaluations] . . . and finds that there is cause for a Rule 17 Guardian ad Litem to be appointed for both parents[.]" The Continuance Order was entered on 18 January 2024.

At the 7 December 2023 permanency planning review hearing, Respondent-Parents each appeared with their appointed Guardian ad litem. In the corresponding permanency planning review order, the trial court found Respondent-Mother had refused recommended mental health treatment and Respondent-Father did not have stable employment. The trial court identified mental health, housing, substance abuse, and employment as issues which presented barriers to reunifying Respondent-Parents with the juveniles.

On 24 January 2024, DSS filed Motions to Terminate Respondent-Parents' parental rights in Adeline and Elena. In the Motion, DSS alleged Respondent-Parents had not adhered to their case plan, had not consistently participated in the

services it had made available to them to reunify with the juveniles, and had not consistently taken steps to become employed or sober. Pursuant to a permanency planning review hearing on 15 August 2024, the trial court found a "[l]ack of stable employment" and "mental health issues[ ]" remained as barriers to reunifying Respondent-Parents with the juveniles; however, the trial court no longer identified housing as an issue.

On 13 September 2024, the trial court entered an Order terminating Respondent-Parents' parental rights in Adeline and Elena pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). Respondent-Father and Respondent-Mother respectively filed timely Notice of Appeal on 18 and 19 September 2024.

## Issues

The issues on appeal are whether the trial court: (I) abused its discretion in appointing a Guardian ad litem for Respondent-Father without notice; and (II) erred in concluding grounds existed to terminate Respondent-Mother's parental rights in the minor children pursuant to N.C. Gen. Stat. § 7B-1111(a).

## Analysis

### I. Respondent-Father

Respondent-Father's sole argument on appeal is that the trial court abused its discretion in appointing him a Guardian ad litem "without notice or conducting an inquiry." Respondent-Father contends this decision deprived him of his constitutional right to conduct his own litigation.

- 4 -

As a threshold matter, we note there is nothing in the Record to indicate Respondent-Father objected to being appointed a Guardian ad litem, and neither Respondent-Father nor the juveniles' Guardian ad litem has addressed preservation of this issue in their briefing to this Court.[3] "Our Courts have consistently stated, 'a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal.' " *State v. Gardner*, _ N.C. App. _, _, 917 S.E.2d 494, 500 (2025) (quoting *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982)); *see also In re J.N.*, 381 N.C. 131, 133, 871 S.E.2d 495, 497 (2022) (citations omitted); N.C.R. App. P. 10(a)(1) (2024).

However, in exceptional circumstances, our appellate courts may "consider constitutional questions not properly raised in the trial court[.]" *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) (citing N.C.R. App. P. 2) (other citations omitted). Based on the limited set of facts before us, we believe this is such an exceptional case. The Record tends to show the nature in which the trial court appointed Respondent-Father a Guardian ad litem—*sua sponte* in a continuance order—made it impossible for Respondent-Father to lodge a contemporaneous objection.[4] *See In re J.N.*, 381 N.C. at 135, 871 S.E.2d at 499 (Earls, J., concurring) ("[A] parent must actually have an opportunity to make the argument in the court

---

[3] Petitioner DSS did not file a brief.

[4] It is, of course, possible—if not probable—there is more context to the trial court's determination Guardians ad litem were necessary for Respondent-Parents. However, we are constrained by the information in the Record before us.

below."); *cf. In re R.P.*, 252 N.C. App. 301, 305, 798 S.E.2d 428, 431 (2017) (holding that although a parent's right to findings regarding his constitutionally-protected status is waived if the parent does not raise the issue before the trial court, no waiver occurred where parent had not been afforded the opportunity to raise the issue). Thus, we, in our discretion, invoke Rule 2 of the North Carolina Rules of Appellate Procedure to review Respondent-Father's argument.[5]

"On motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent who is incompetent in accordance with G.S. 1A-1, Rule 17." N.C. Gen. Stat. § 7B-1101.1(c) (2023). An incompetent adult is one who

> lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, intellectual disability, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition.[6]

*Id.* § 35A-1101(7) (2023).

"[T]rial court decisions concerning both the appointment of a guardian *ad litem* and the extent to which an inquiry concerning a parent's competence should be conducted are reviewed on appeal using an abuse of discretion standard." *In re*

---

[5] N.C.R. App. P. 2 (2024) ("To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.").

[6] Notably, however, "an individual can simultaneously be found incompetent under Chapter 35A yet not require a GAL under Rule 17." *In re Q.B.*, 375 N.C. 826, 837, 850 S.E.2d 898, 905 (2020) (footnote omitted).

*T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015) (citing *In re M.H.B.*, 192 N.C. App. 258, 261, 664 S.E.2d 583, 585 (2008)). "An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citation, quotation marks, and alteration omitted). "The trial court should always keep in mind that the appointment of a guardian *ad litem* will divest the parent of their fundamental right to conduct his or her litigation according to their own judgment and inclination." *In re J.A.A.*, 175 N.C. App. 66, 71, 623 S.E.2d 45, 48 (2005) (citing *Hagins v. Redevelopment Comm. of Greensboro*, 275 N.C. 90, 102, 165 S.E.2d 490, 498 (1969)).

In *Rutledge v. Rutledge*, the defendant-father's counsel filed a motion asking for a Guardian ad litem to be appointed for the defendant-father. 10 N.C. App. 427, 429, 179 S.E.2d 163, 164 (1971). The plaintiff-mother filed an affidavit in opposition of the motion; however, the defendant-father "did not appear in person or file answer[.]" *Id.* at 430, 179 S.E.2d at 164. The trial court denied the motion and this Court, on appeal, noted the denial was proper because it would have been erroneous for the trial court to appoint the defendant-father a Guardian ad litem where the record did not "indicate that the defendant had any knowledge or notice that such a motion was being made." *Id.* at 430-31, 179 S.E.2d at 165.

Here, there is no evidence on the Record that Respondent-Father had any knowledge prior to the entry of the trial court's Continuance Order that the trial court was considering appointing a Guardian ad litem for him. Thus, based on the Record

before us, the trial court abused its discretion by appointing a Guardian ad litem for Respondent-Father without providing Respondent-Father notice and an opportunity to be heard on the issue.[7] *See id.* at 431, 179 S.E.2d at 165 ("In the absence of notice to the defendant and opportunity granted him to be heard, appointment of a guardian for him would have been error." (citing *Hagins*, 275 N.C. at 101-02, 165 S.E.2d at 497-98)); *see also Hagins*, 275 N.C. at 101-02, 165 S.E.2d at 497-98 ("It is clear therefore that when a party's lack of mental capacity is asserted and denied—and he has not previously been adjudicated incompetent to manage his affairs—He is entitled to notice and an opportunity to be heard before the judge can appoint . . . a guardian ad litem for him." (citations omitted)).

Therefore, the trial court abused its discretion by appointing a Guardian ad litem for Respondent-Father without providing Respondent-Father notice and an

---

[7] The juveniles' Guardian ad litem, in his briefing to this Court, makes no argument addressing whether Respondent-Father received adequate notice and opportunity to be heard on the issue of being appointed a Guardian ad litem. Rather, the juveniles' Guardian ad litem, conceding Respondent-Father was *not* adjudicated mentally incompetent, argues Respondent-Father has "diminished capabilities," and, thus, Respondent-Father's Guardian ad litem was acting merely in an assistive role, rather than a substitutive role—which, according to the juveniles' Guardian ad litem, did not deprive Respondent-Father of his right to conduct his litigation according to his own judgment. We note this is not the appropriate analysis, since our General Statutes were amended in 2013 to authorize the appointment of a Guardian ad litem only for an incompetent adult—not an adult with diminished capacity. Therefore, even presuming there is evidence Respondent-Father has diminished capacity, the trial court should not have appointed a Guardian ad litem for Respondent-Father on this basis. Further, there is no evidence in the Record to support the assertion Respondent-Father's Guardian ad litem acted only in an assistive capacity. *See In re T.L.H.*, 368 N.C. at 107, 772 S.E.2d at 455 (insufficient evidence of whether Guardian ad litem was appointed to act in a substitutive versus assistive capacity where the trial court did not specify so in its order).

opportunity to be heard.[8]  Consequently, we vacate the Order as to Respondent-Father and remand for a new hearing, including any further determination as to the necessity of appointing a Guardian ad litem for Respondent-Father.[9]

## II.     Respondent-Mother

Respondent-Mother argues the trial court erred in determining grounds existed to terminate her parental rights in Adeline and Elena.

"At the adjudicatory stage of a termination of parental rights hearing, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that at least one ground for termination exists." *In re O.J.R.*, 239 N.C. App. 329, 332, 769 S.E.2d 631, 634 (2015) (citations omitted); *see also* N.C. Gen. Stat. § 7B-1109(f) (2023). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." *In re S.C.R.*, 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (2009) (citation and quotation marks omitted).  Likewise, "[u]nchallenged findings are deemed to be supported by

---

[8] Additionally, the trial court's decision appears to have been based solely on Respondent-Father's psychological evaluation.  It is true, the evaluation indicated Respondent-Father suffers from "severe mental illness," but "evidence of mental health problems is not *per se* evidence of incompetence to participate in legal proceedings." *In re J.R.W.*, 237 N.C. App. 229, 234, 765 S.E.2d 116, 120 (2014) (citations omitted); *see also In re Q.B.*, 375 N.C. at 836, 850 S.E.2d at 905 ("[A]s our case law demonstrates, neither mental health limitations nor a low IQ constitute per se evidence of a lack of competency for purposes of Rule 17." (citing *In re T.L.H.*, 368 N.C. at 110, 772 S.E.2d at 457; *In re Z.V.A.*, 373 N.C. 207, 210, 835 S.E.2d 425, 429 (2019); and *In re J.R.W.*, 237 N.C. App. at 234, 765 S.E.2d at 120)).

[9] We note the trial court appointed a Guardian ad litem for Respondent-Mother in the same manner as Respondent-Father.  However, Respondent-Mother has not argued on appeal this decision was erroneous, and "[i]ssues not presented and discussed in a party's brief are deemed abandoned." N.C.R. App. P. 28(a) (2024).

the evidence and are binding on appeal." *In re K.N.K.*, 374 N.C. 50, 53, 839 S.E.2d 735, 738 (2020) (citation and quotation marks omitted). We review the trial court's conclusions of law de novo. *In re B.S.O.*, 234 N.C. App. 706, 708, 760 S.E.2d 59, 62 (2014) (citation omitted).

Here, the trial court concluded Respondent-Mother's parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), which authorizes the trial court to terminate a party's parental rights if "[t]he parent has abused or neglected the juvenile." N.C. Gen. Stat. § 7B-1111(a)(1) (2023). A "neglected juvenile" includes one whose parent does either of the following:

> a. Does not provide proper care, supervision, or discipline.
>
> . . . .
>
> e. Creates or allows to be created a living environment that is injurious to the juvenile's welfare.

*Id.* § 7B-101(15) (2023).

In this case, at the time of the termination hearing, approximately eighteen months had passed since the juveniles entered DSS custody. "[I]f the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent." *In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) (citation omitted). In determining the likelihood of future neglect, our Supreme Court has noted: "Because it lacks a crystal ball, a trial court may consider many past and present factors to make this forward-looking

determination." *In re M.B.*, 382 N.C. 82, 86, 876 S.E.2d 260, 264 (2022) (citation omitted). "For instance, a trial court 'must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing.'" *Id.* at 86, 876 S.E.2d at 265 (quoting *In re Z.V.A.*, 373 N.C. at 212, 835 S.E.2d at 430). "However, this evidence of changed conditions must be considered in light of the history of neglect by the parents and the probability of a repetition of neglect." *Smith v. Alleghany Cnty. Dep't of Social Servs.*, 114 N.C. App. 727, 732, 443 S.E.2d 101, 104 (1994) (quoting *In re Ballard*, 311 N.C. 708, 714, 319 S.E.2d 227, 231 (1984)). Likewise, "[a] parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.A.*, 374 N.C. 865, 870, 844 S.E.2d 916, 921 (2020) (citation and quotation marks omitted).

In the case *sub judice*, Respondent-Mother argues the evidence did not establish a likelihood of future neglect. In doing so, Respondent-Mother challenges many of the trial court's Findings of Fact. As to Findings 19 through 23, which find that Respondent-Mother used marijuana throughout her pregnancies and the juveniles tested positive for marijuana at their respective births, Respondent-Mother argues "[a]ny allegations regarding the use of illegal marijuana by [Respondent-Mother] are without merit" because Respondent-Mother only uses "legal forms of marijuana products[.]" However, the Findings simply indicate Respondent-Mother used marijuana and do not make any assertions about its legality. Indeed, the Record shows Respondent-Mother testified she is a regular user of marijuana and repeatedly

tested positive for marijuana; thus, the Findings are supported by competent evidence and are binding on appeal. *In re S.C.R.*, 198 N.C. App. at 531, 679 S.E.2d at 909 (citation omitted).

Respondent-Mother additionally argues these Findings are irrelevant to the present determination because DSS did not remove the juveniles from her care when they were born, even though the juveniles tested positive for marijuana at their respective births. Nonetheless, Respondent-Mother's substance use was identified as an issue at the time the juveniles were adjudicated neglected. As such, we cannot agree with Respondent-Mother that her substance use was irrelevant to the present determination. *See In re G.W.*, 286 N.C. App. 587, 594, 882 S.E.2d 81, 88 (2022) (explaining finding was relevant because it related to existence or nonexistence of conditions alleged in petition).

Next, Respondent-Mother argues Findings 26 through 44 are recitations of the evidence, rather than proper findings of fact. It is true, Findings 26 through 29 each begin with "The report alleged" and recite the allegations in the 21 February 2023 neglect report. Even so, the mere inclusion of such "findings" will not undermine an order which otherwise contains proper findings supporting its conclusions. *See In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58-59 (2019) ("[W]e review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." (citation omitted)). In this case, the trial court's Order contains ample specific, ultimate Findings which support its Conclusion

that grounds existed to terminate Respondent-Mother's parental rights. Moreover, the remaining Findings which Respondent-Mother challenges on this ground "appear to be based, at least in part, on testimony provided at the hearing[.]" *Id.* at 410, 831 S.E.2d at 60-61. This is "sufficient to demonstrate that the trial court made an independent determination regarding the evidence presented." *Id.* at 410, 831 S.E.2d at 61. Consequently, we reject Respondent-Mother's arguments on this ground.

Lastly, Respondent-Mother challenges Finding of Fact 25, which states the family had been evicted "a few weeks prior" to DSS receiving the 21 February 2023 report of neglect. Respondent-Mother asserts the evidence shows the family had been living in their van for four days, rather than weeks. We agree with Respondent-Mother that to the extent the Finding indicates the family had been evicted "weeks" prior, it is unsupported by the Record. However, the crux of the Finding—that the family had been evicted and was living in their van when DSS received the neglect report—is supported by the Record and, as such, is binding on appeal. *In re S.C.R.*, 198 N.C. App. at 531, 679 S.E.2d at 909 (citation omitted).

Here, the juveniles were adjudicated neglected and removed from Respondent-Mother's custody based on issues with Respondent-Mother's housing, mental health, substance use, and employment. While there was evidence presented at the termination hearing that Respondent-Mother had found stable housing and had begun to comply with "some" of the clinical recommendations in regard to her mental health, the trial court found the other issues remained. *See In re D.W.P.*, 373 N.C.

327, 339-40, 838 S.E.2d 396, 406 (2020) (upholding trial court's determination there was a likelihood of future neglect even though the respondent-mother had made progress on her case plan). These Findings are supported by competent evidence and are binding on appeal, even in light of any evidence Respondent-Mother had remedied her housing situation or had begun to take steps to address her mental health issues. *In re S.C.R.*, 198 N.C. App. at 531, 679 S.E.2d at 909 (citation omitted).

The trial court's Findings establish Respondent-Mother inconsistently followed her case plan and, at the time of the termination hearing, had not taken adequate steps to secure stable employment[10] or address her marijuana usage. Moreover, the Record shows Respondent-Mother had only recently begun to cooperate with some of the recommendations to treat her mental health, despite its presence as an issue throughout the life of this case. Thus, the trial court's Findings demonstrate both past neglect and a likelihood of future neglect. Therefore, the trial court's Findings, in turn, support its Conclusion that Respondent-Mother's parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). Consequently, the trial court did not err in terminating Respondent-Mother's parental rights.

## Conclusion

Accordingly, for the foregoing reasons, we vacate the Order and remand for a

---

[10] The trial court's Finding regarding Respondent-Mother's employment is unchallenged and, consequently, binding on appeal. *In re K.N.K.*, 374 N.C. at 53, 839 S.E.2d at 738 (citation omitted).

new termination hearing as to Respondent-Father. At the hearing, the trial court may conduct an inquiry into the necessity of appointing a Guardian ad litem for Respondent-Father if there is a substantial question as to Respondent-Father's competency. *In re J.A.A.*, 175 N.C. App. at 72, 623 S.E.2d at 49 (citation omitted). We affirm the Order as to Respondent-Mother.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

Judges ZACHARY and WOOD concur.